UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
DELTA PHARMACEUTICAL CORP., RAOUL
DIAMANTSTEIN and STEVEN LIEBER,

                                      Plaintiffs,                MEMORANDUM
                                                                   AND ORDER
    -against-                                                     96 CV 4672 (RJD) (RML)

CARDINAL HEALTH, INC., MARMAC
DISTRIBUTORS, INC., ALEX STACHTIARIS,
GORDON TROUP and JIM SCOTT,

                                      Defendants.
----------------------------------------------------------------X

LEVY, United States Magistrate Judge:

        Plaintiffs Delta Pharmaceutical Corp. ("Delta"), Raoul Diamanstein and Steven Lieber (collectively, "plaintiffs") seek production of documents that defendants claim are protected under the attorney-client privilege and work-product doctrine. Defendants Cardinal Health, Inc. ("Cardinal Health"), Marmac Distributors, Inc., Alex Stachtiaris, Gordon Troup and Jim Scott (collectively, "defendants") move for a protective order. My rulings are detailed below.

## BACKGROUND

        The parties are familiar with the facts and circumstances surrounding this case. Briefly, plaintiffs commenced this action in New York State Supreme Court on or about September 13, 1996. The action was removed to this court on September 20, 1996, and plaintiffs filed an Amended Complaint on November 6, 1996. According to plaintiffs, Cardinal Health, a large pharmaceutical wholesaler, solicited Delta, a wholesale distributor of pharmaceuticals, to use Cardinal Health as its principal supplier of pharmaceutical products in February 1994. (Amended Compl. ¶ 7.) Plaintiffs allege that by the end of June 1994, Delta accumulated a

balance owing to Cardinal Health in the approximate amount of $695,000, which Cardinal Health was to carry on an interest free basis without payment by Delta until February 1995 or until the balance reached $2,500,000. (Id. ¶ 14.) They also allege that Cardinal Health advised Delta that it had a credit limit of just under $10,000,000 and that Delta should increase purchases to take advantage of the credit limit. (Id. ¶ 24.) Delta continued to increase its inventory, and by October 24, 1994, Delta owed Cardinal Health in excess of $1,700,000. (Id. ¶ 26.) Delta contends that on or about October 25, 1994, Cardinal Health demanded immediate repayment of all outstanding sums. (Id. ¶ 30.)

Plaintiffs also contend that defendants referred to Delta as the "jewboy company" and to Delta's shareholders as the "brooklyn jewboys."[1] (Id. ¶ 28.) They allege that defendants Alex Stachtiaris, Gordon Troup and Jim Scott, among others, decided that they did not want Cardinal Health to support, contract or do business with a "Jewboy company." (Id. ¶ 29.) As such, plaintiffs contend that Cardinal Health's demand of immediate repayment of all outstanding sums, as well as other actions, were racially motivated. (Id. ¶ 30.)

Delta alleges: (1) breaches of contract that were racially motivated (id. ¶¶ 39-41); (2) breaches of agreements because Cardinal Health denied receiving shipments of returned products from Delta (id. ¶¶ 52, 55); (3) misappropriation and conversion (id. ¶ 58); (4) breaches of fiduciary obligations (id. ¶ 63); (5) violations of 42 U.S.C. § 1981 (id. ¶ 66); (6) defamation (id. ¶ 73); (7) injurious falsehood (id. ¶ 76); (8) interference with Delta's pre-contractual negotiations (id. ¶ 78); (9) prima facie tort (id. ¶ 84); (9) fraudulent misrepresentations (id. ¶ 86);

---

[1] Delta was owned and operated by Orthodox Jews and its operations were closed on Sabbaths and other Jewish holidays. (Amended Compl. ¶ 28.)

(10) violations of Article I, Section II of the New York State Constitution and Section 40(c) of the New York Civil Rights Law (id. ¶ 90); (11) violations of the Human Rights Law of the State of New York, Section 296(13) (id. ¶ 93); and (12) violations of Mass. G. L. Chapter 93A, Sections 2 and 11. (Id. ¶ 102.)

Defendants deny these allegations and defendant Marmac Distributors, Inc. counterclaims. Marmac Distributors, Inc., d/b/a Cardinal Health Inc. ("Marmac") was a Connecticut corporation with its principal place of business in Peabody, Massachusetts and a wholly owned subsidiary of Cardinal. (See Counterclaim Against Plaintiffs Delta Pharmaceutical Corporation, Steven S. Lieber, and Raoul Diamantstein, dated Sept. 15, 2004 ("Defs.' Counterclaim"), ¶ 1.) Marmac alleges that on or about June 30, 1995, Delta executed a promissory note in the principal amount of $500,000 payable to Marmac, which represented Delta's existing debt to Marmac arising out of Delta's prior purchases of products. (Id. ¶ 9.) Further, Marmac contends that the obligation to make the promissory note payments was secured by the assets described in the security agreement between Marmac and Delta. (Id. ¶ 20.) Marmac's counterclaim alleges that: (1) Delta defaulted on the promissory note for failure to make payments when due (id. ¶¶ 10-18); (2) Delta breached the security agreement between Marmac and Delta (id. ¶¶ 19-23); and (3) plaintiffs Steven Lieber and Raoul Diamanstein breached personal guaranties to make full and prompt payment when due. (Id. ¶¶ 25, 26.) A more detailed analysis of the facts and each party's claims is unnecessary for purposes of the pending motions.

**DISCUSSION**

A. Attorney-Client Privilege

"The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." Upjohn v. United States, 449 U.S. 383, 389 (1981) (citations omitted). According to the Second Circuit:

> (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived. . . .

In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983, 731 F.2d 1032, 1036 (2d Cir. 1984) (citations omitted). The reason for the privilege is "to encourage clients to make full disclosure to their attorneys" so that their attorneys are able to provide sound legal advice. Id. (quoting Fisher v. United States, 425 U.S. 391, 403 (1976)). Further, "[f]actual investigations by an attorney or its agents, which include gathering statements from employees, clearly fall within the attorney-client rubric." Lugosch v. Congel, 218 F.R.D. 41, 47 (N.D.N.Y. 2003). The burden of establishing the existence of the privilege rests on the proponent of the privilege. von Bulow v. von Bulow, 811 F.2d 136, 144 (2d Cir. 1987).

The attorney-client privilege may be asserted by corporations, and is meant to protect communications seeking legal advice, not business advice. Upjohn, 449 U.S. at 389-92 (finding that communications made by employees acting in their official capacity are privileged so long as they are made for the purpose of securing legal advice for the corporate client); In re Currency Fee Antitrust Litig., MDL No. 1409, M 21-95, 2002 U.S. Dist. LEXIS 21196, at *5-6 (S.D.N.Y. Nov. 4, 2002) (as long as a document provides predominately legal advice, it is entitled to the attorney-client privilege). Moreover, the privilege extends only to

4

communications and not to facts. Upjohn, 449 U.S. at 395. There is nothing preventing a party seeking disclosure from deposing an adversary client or employee who communicated with counsel. While it may be more convenient to secure notes taken by the attorney, "such considerations of convenience do not overcome the policies served by the attorney-client privilege." Id. at 396. "Only when the communications are relayed to those who do not need the information to carry out their work or make effective decisions on the part of the company is the privilege lost." Andritz Sprout-Bauer v. Beazer East, 174 F.R.D. 609, 633 (M.D. Pa. 1997).

B. Work Product

Federal Rule of Civil Procedure 26(b)(3) provides, in relevant part:

A party may obtain discovery of documents and tangible things
otherwise discoverable . . . and prepared in anticipation of
litigation or for trial by or for another party or by or for that other
party's representative . . . only upon a showing that the party
seeking discovery has substantial need of the materials in the
preparation of the party's case and that the party is unable without
undue hardship to obtain the substantial equivalent of the materials
by other means. . . . [T]he court shall protect against disclosure of
the mental impressions, conclusion, opinions, or legal theories of
an attorney or other representative of a party concerning the
litigation.

The work product doctrine is "intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." United States v. Adlman, 134 F.3d 1194, 1196 (2d Cir. 1998) (quoting Hickman v. Taylor, 329 U.S. 495, 510-11 (1947)). According to Adlman:

[A] requirement that documents be produced primarily or
exclusively to assist in litigation in order to be protected is at odds
with the text and the policies of the Rule. Nowhere does Rule
26(b)(3) state that a document must have been prepared to aid in

5

> the conduct of litigation in order to constitute work product, much less primarily or exclusively to aid in litigation. Preparing a document 'in anticipation of litigation' is sufficient.

134 F.3d at 1198.

Ordinary work product "is not discoverable unless the party seeking discovery has a substantial need for the materials and . . . cannot obtain the substantial equivalent of the materials by other means" whereas opinion work product, which includes counsel's mental impressions, conclusions, opinions or legal theories, enjoys almost absolute immunity and can only be discovered in rare circumstances. Baker v. General Motors Corp., 209 F.3d 1051, 1054 (8th Cir. 2000). Forcing the disclosure of attorney "notes and memoranda of witnesses' oral statements is particularly disfavored because it tends to reveal the attorney's mental processes . . . ." Upjohn, 449 U.S. at 399.

  C. Plaintiffs' Arguments

In addition to specific challenges to individual documents (which are detailed below), plaintiffs argue that defendants assured the court that there would be no prejudice resulting from the stay which occurred in this case from 1997 until 2001. (Letter of Michael J. Gottesman, Esq., dated June 1, 2005 ("Gottesman Ltr."), at 3.) Plaintiffs allege that defendants violated obligations that arose following the Stay Order issued by Magistrate Judge Pollack. (Id. at 4.) More specifically, they allege that defendants had (1) "the obligation to ascertain and to advise the Court if documents and/or information, including information on Cardinal computers, were being lost during the stay," and (2) "the obligation to respond honestly and candidly to [plaintiffs'] letters asking Judge Dearie to vacate the stay and only after they had made reasonable inquiry to determine if information and/or documents were being lost during the

6

stay." (Id.) Plaintiffs allege that because defendants violated these obligations, critical information and documents have become unavailable. (Id.) It appears the information they are seeking relates to credit limits and credit reports. (Id.) Further, plaintiffs argue that it would be fundamentally unfair to allow defendants to shield other information, which is available and which they took pains to preserve, behind the attorney client and/or work product privileges. (Id.) As such, they allege that defendants "should be deemed to have waived the attorney client and work product privileges or be estopped from invoking such privileges to avoid manifest injustice." (Id.)

Defendants respond that the attorney client privilege is not waived merely because time passed, or because the privileged material has been deemed important to the party seeking disclosure. (Letter Memorandum of Fernando A. Bohorquez Jr., dated May 11, 2005 ("Bohorquez Ltr. Mem."), at 13.) Defendants correctly point out that plaintiffs have cited no case law to support their position.

D. Application

After an in camera review of all documents, my rulings are as follows:

1. Bates 142 (copies at 1121, 1180, 2130, 2459 and P-3)

Bates 142 is a memorandum dated April 14, 1995 from Peter Behrent to George Bennett, Esq., and copied to Alex Stachtiaris, Jim Millar, Jim Scott and Gordon Troup. Behrent, Stachtiaris, Millar, Scott and Troup were all Cardinal employees at the time, and Bennett was Cardinal's general in-house counsel. (See Affirmation of Fernando A. Bohorquez Jr., dated May 11, 2005 ("Bohorquez Aff."), ¶¶ 3, 4.) Plaintiffs allege that this document may contain business as opposed to legal advice. Bates 142 reflects information provided to Bennett to assist him in

7

rendering legal advice to Cardinal concerning the Delta account. The court finds that this document was made to aid Bennett in anticipation of litigation, and it is legal in nature. See Upjohn, 449 U.S. at 390 ("[T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice.") It appears to have been kept confidential. Thus, this document is protected by the attorney-client privilege, as are copies 1121, 1180, 2130, 2459 and P-3.

### Bates 196 (copy at 4290), 197, 306, 513, 1667 and 4967

Bates 196, 197 and 4290 are Stachtiaris's notes from telephone discussions with outside counsel Jeffrey Loeb, Esq. on or about February 2 or 3, 1995, regarding the Delta account. (Declaration of Alex Stachtiaris, dated May 11, 2005 ("Stachtiaris Decl."), ¶ 6.) Further, Bates 306 and Bates 513 are Stachtiaris's notes of telephone conversations between Stachtiaris and Loeb, regarding the Delta account, on February 22, 1995 and December 12, 1994, respectively. (Id. ¶¶ 5, 7.) The court finds that all of these notes reflect Loeb's legal advice as to how Cardinal should proceed in negotiations with Delta and they are legal in nature. All documents appear to have been kept confidential. The court finds Bates 196 (copy 4290), 197, 306 and 513 protected by the attorney-client privilege. See Upjohn, 449 U.S. at 389-93.

Bates 1667 constitutes Stachtiaris's notes reflecting a meeting with Loeb regarding the Delta account sometime before June 15, 1995. (Stachtiaris Decl. ¶ 8.) It appears to have been kept confidential. Based on the content of this document, and the context in which it was written, the court finds Bates 1667, with the exception of item 5, protected by the attorney-client privilege, as it reflects confidential legal advice. See In re Currency Fee Antitrust

Litig., 2002 U.S. Dist. LEXIS 21196, at *5-6. Accordingly, Cardinal is directed to produce Bates 1667, redacted to include only item 5.

Bates 4967 contains Stachtiaris's notes regarding the Delta account. (Stachtiaris Decl. ¶ 10.) As plaintiffs correctly allege, defendants have not sustained their burden of demonstrating that the redacted material is privileged. (Gottesman Ltr. at 6.) Stachtiaris does not allege that this was a communication with counsel and there is no evidence that it was made for the purpose of seeking legal advice. (Stachtiaris Decl. ¶ 10.) Accordingly, the redacted portions are not protected by the attorney client privilege and must be disclosed.

<u>Bates 297-303, 314-317, 318-321, 2050-2050A, 2376-2377, 2394-2399, 2423-2426</u>:

Bates 297-303, 314-317, 318-321, 2050-2050A, 2376-2377, 2394-2399 and 2423-2426 are drafts of letters proposed to be sent to Delta. Bates 297-298 and 2050-2050A are copies of a draft letter that was sent by Stachtiaris to Loeb seeking the latter's legal advice, and reviewed by Loeb for that purpose. (See Affidavit of Jeffrey B. Loeb, Esq., dated May 11, 2005 ("Loeb Aff."), ¶ 6.) Bates 2376-2377, 299-303, 314-321, 2394-2399 are drafts prepared or reviewed by Loeb, and likely other counsel, for the purpose of obtaining legal advice. (Loeb Aff. ¶¶ 7-8.) According to defendants, there is no indication that these documents were shared with any third parties. The court finds all of these documents protected by the attorney-client privilege and work product doctrine. See Muller v. Walt Disney Prods., 871 F. Supp. 678, 682 (S.D.N.Y. 1994) ("[p]reliminary drafts of contracts are generally protected by attorney-client privilege, since preliminary drafts may reflect not only client confidences, but also the legal advice and opinions of attorneys, all of which is protected by the attorney-client privilege.")

9

(citations and internal quotations omitted); Andritz Sprout-Bauer, 174 F.R.D. at 633 ("Drafts of documents prepared by counsel or circulated to counsel for comments on legal issues are considered privileged if they were prepared or circulated for the purpose of giving or obtaining legal advice and contain information or comments not included in the final version."). See also In re Grand Jury Subpoena, 731 F.2d at 1037.

Bates 1313-1356, 1450-1455, 1461-1463

According to defendants, Bates 1330-1353, 1450-1455 and 1461-1463 are Cardinal's in-house counsel J.V. Wulf, Esq.'s notes of interviews of Cardinal employees which were undertaken to investigate the allegations of the complaint when it was first filed. (Affidavit of J.V. Wulf, Esq., dated May 11, 2005 ("Wulf Aff."), ¶¶ 3-5.) It appears that the interviews took place in September, October and November of 1996. According to defendants, the interviews were not attended by third parties, and have been kept confidential. Bates 1313-1329 are notes taken by Cardinal's in-house counsel George Bennett. (Wulf Aff. ¶ 3.) They are also notes from interviews of Cardinal employees undertaken to investigate the allegations of the complaint when it was first filed. It appears the interviews took place in September of 1996. According to defendants, the interviews were not attended by third parties, and have been kept confidential. "Factual investigations by an attorney or its agents, which include gathering statements from employees, clearly fall within the attorney-client rubric." Lugosch, 218 F.R.D. at 47. Based on Lugosch, Adlman and Upjohn, the court finds Bates 1313-1353, 1450-1455 and 1461-1463 protected by the attorney-client privilege and work product doctrine. See Upjohn, 449 U.S. at 399 (forcing the disclosure of attorney "notes and memoranda of witnesses' oral statements is particularly disfavored because it tends to reveal the attorney's mental processes . .

. .").

Bates 1356 reflects notes made by Wulf after the commencement of litigation, and they appear to have been kept confidential. They are thus protected by the work product doctrine. Adlman, 134 F.3d at 1196 (finding that he work product doctrine is "intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries.") (citation omitted).

Although the notes in Bates 1354 and 1355, written by Wulf, reflect a meeting that was attended by two employees of Consolidated Delivery and Logistics, Inc., they are also protected by the attorney-client privilege. See Major League Baseball Properties, LLC v. Salvino, LLC, 00 Civ. 2855, 2003 U.S. Dist. LEXIS 14390, at *2 ("The common interest rule extends the attorney-client privilege to communications between an attorney and persons who, though not the attorney's clients, share the same legal interest.").[2]

Additionally, some courts have held that the list of witnesses interviewed by an attorney is the attorney's work product. See In re MIT Technology Corp. Secs. Litig., No. 00-0745, 2002 U.S. Dist. LEXIS 13015, at *7-8 (C.D. Ca. June 14, 2002) ("[T]he identity of witnesses interviewed by opposing counsel is protected."). However, the names are subject to disclosure if the party seeking discovery has a substantial need for that information in preparation of his or her case. In re Priceline.com Inc. Secs. Litig., No. 00-CV-1884, 2005 U.S. Dist. LEXIS 11142, at *11 (D. Conn. June 7, 2005). According to defendants, however, the

---

[2] Plaintiffs allege that Consolidated Deliveries and Logistics, Inc. picked up 69 cartons of product from Delta and delivered them to Cardinal on August 12 and 13, 1996. (Amended Compl. ¶¶ 49-54.) There is a dispute over the value of the goods delivered.

names of the employees who were interviewed have already been disclosed to plaintiffs.

With regard to Cardinal employee Sandra Wray, plaintiffs apparently want to know whether she would verify the plaintiffs' allegations concerning repayment agreements. (Gottesman Ltr. at 8-9.) They believe some of this information is contained in these documents. Plaintiffs argue that the "substantial equivalent of the notes is simply not available and at a minimum the facts contained in the notes should be produced." (Gottesman Ltr. at 9.) The court disagrees. Wray could have been deposed in 2001 and can still be deposed now. Plaintiffs have failed to show a substantial need for these notes. After an in-camera review, the court finds deposing Wray an appropriate alternative method for obtaining the information that is contained in the notes. While it may be more convenient to secure notes taken by the attorney, "such considerations of convenience do not overcome the policies served by the attorney-client privilege." Upjohn, 449 U.S. at 396.

Similarly, it does not appear that plaintiffs have ever attempted to take the deposition of Cardinal employee John Deweese. It is unclear what information plaintiffs are seeking from DeWeese. Deposing Deweese would be an appropriate alternative to obtaining any information that might be contained in the privileged notes.

Finally, plaintiffs request the names of the Cardinal employees who actually conducted some of the interviews noted above. Defendants state that they are not disclosing the names because they have no reason to believe that these people have any first-hand knowledge of the relevant issues. (Bohorquez Ltr. at 18.) The court finds defendants' arguments unpersuasive and orders them to disclose the names. See In re MIT Technology Corp. Secs. Litig., 2002 U.S. Dist. LEXIS 13015, at *7 ("[T]he identity and location of witnesses that *may*

*have* knowledge of any discoverable matter is not protected . . . .") (emphasis added). While it is possible that "information possessed by an agent working for an attorney, such as an investigator, may be protected as work product," his or her identity does not enjoy the same protection. United States v. District Council, 90 Civ. 5722, 1992 U.S. Dist. LEXIS 12307, at *26 (S.D.N.Y. Aug. 18, 1992). Also, an agent who conducts interviews does not fall under the arguably protected category of witnesses who are interviewed by the agent. See In re MIT Technology Corp. Secs. Litig., 2002 U.S. Dist. LEXIS 13015, at *8.

Bates 1938 (copies at 4340 and 4989)

Bates 1938 is a document that contains notes taken by Behrent on or about October 7, 1996. (Bohorquez Aff. ¶ 23.) The redacted portion of Bates 1938 reflects a discussion with Wulf regarding the Delta account after service of plaintiffs' complaint, and it contains legal advice from counsel. It appears that the document has been kept confidential. As such, it is protected by the attorney-client privilege. See Upjohn, 449 U.S. at 389-93.

Bates 1954 and 1752

Bates 1954 is a transmittal memorandum from Cardinal employee Phillip Tatro to Wulf, dated December 13, 1996. Bates 1752 is a transmittal memorandum from Troup to Wulf dated December 12, 1996. The memoranda themselves are not privileged and must be disclosed.

Bates 2092

Plaintiffs no longer challenge bates 2092. (Gottesman Ltr. at 10.)

Bates 2704

Bates 2704 is a note from Willie Lafontaine to outside counsel Bob Fryd, Esq., regarding Lafontaine's 1994 calendar report and notes regarding Delta. (Bohorquez Aff. ¶ 27.)

13

LaFontaine was a Cardinal employee until approximately May 1997. (Id.) The underlying report and notes referred to in the document have been disclosed to plaintiffs. (Bohorquez Ltr. at 11.) Most of the document does not contain information communicated for the purpose of assisting counsel in providing legal advice. However, the fourth and fifth sentences contain information given to an attorney to assist in providing legal advice. Accordingly, the fourth and fifth sentences may be redacted, but the rest of the document is not privileged and must be disclosed.

### Bates 2715 and 2716

Bates 2715 and 2716 are e-mails from Behrent to Wulf dated July 19 and 17, 1996, respectively. (Bohorquez Aff. ¶ 28.) Bates 2715 does not contain any request for legal advice beyond Behrent asking Wulf to meet with him. Plaintiffs correctly note that no affirmation was furnished by Behrent as to whether the e-mails were sent to Wulf in his legal or his business capacity. As such, defendants have not met their burden. The document is not privileged and must be disclosed.

Bates 2716, however, does seek legal advice on an inter-creditor agreement with Delta. It appears to have been kept confidential. As a result, this document is covered by the attorney-client privilege. See Upjohn, 449 U.S. at 389-93.

### Bates 4331 (copy 2717)

Bates 4331 (copy 2717) is an e-mail from Behrent to Millar and Scott. (Bohorquez Aff. ¶ 30.) The redacted portion describes legal advice given and is protected by the attorney-client privilege.

### Bates 4697, 4718, 4937, 4938, 4955, 4959, 4960, 4961-4964, 4966 and 4968-

<u>4969</u>

Bates 4718, 4937, 4938, 4955, 4959, 4961-4964, 4966 and 4968-4969 contain handwritten notes by Wulf which have been redacted. (Wulf Aff. ¶ 6.) The notes were made by an attorney after the commencement of litigation, and they appear to have been kept confidential. They are thus protected by the work product doctrine. <u>Adlman</u>, 134 F.3d at 1196 (finding that the work product doctrine is "intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries.") (citation omitted). Plaintiffs have not demonstrated a substantial need for the redacted information contained in these documents.

Defendants do not know who wrote the redacted notes on Bates 4960 and 4697, and they do not relate to legal advice. As such, they are not protected by any privilege and must be disclosed.

<u>Bates P-8</u>

P-8 constitutes notes taken by Behrent on or about January 24, 1996 reflecting a meeting between Behrent and other Cardinal employees with both Wulf and Loeb present. (Bohorquez Aff. ¶ 31.) It appears to have been kept confidential. Given that both in-house and outside counsel were present at the meeting, and it relates to legal advice, the court finds P-8 protected by the attorney-client privilege. <u>Upjohn</u>, 449 U.S. at 389-93.

<u>Bates P-9</u>

The redacted portion of P-9 is written by Behrent and it contains legal advice from in-house counsel on or about April 19, 1995. (Bohorquez Aff. ¶ 31.) It appears to have been kept confidential. It is therefore protected by the attorney-client privilege. <u>See</u> <u>Upjohn</u>,

449 U.S. at 389-93.

### Bates P-10

Bates P-10 reflects Behrent's notes from a meeting on May 22, 1995 with Behrent, Stachtiaris, Troup and Loeb. (Bohorquez Aff. ¶ 31.) The document reflects Loeb's legal advice pertaining to Delta. It appears to have been kept confidential. As a result, it is protected by the attorney-client privilege. See Upjohn, 449 U.S. at 389-93.

E. Summary

In sum, Bates 142 (copies at 1121, 1180, 2130, 2459 and P-3), 196 (copy at 4290), 197, 306, 513, 1667 (except item 5), 297-303, 314-317, 318-321, 2050-2050A, 2376-2377, 2394-2399, 2423-2426, 1313-1356, 1450-1455, 1461-1463, 1938 (copies at 4340 and 4989), 2716, 4718, 4331 (copy at 2717), 4937, 4938, 4955, 4959, 4961-4964, 4966, 4968-4969, P-8, P-9 and P-10 are privileged.

Bates 4967, 1954, 1752, 2715, 4960 and 4697 are not privileged and must be disclosed. Bates 2704 is not privileged except for the fourth and fifth sentences which may be redacted prior to disclosure.

Finally, defendants must disclose the names of the parties who conducted employee interviews. (See Bates 1313-1353, 1450-1455 and 1461-1463.)

SO ORDERED.

/s/
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
September 20, 2005