UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
DELTA PHARMACEUTICAL CORP., RAOUL
DIAMANTSTEIN and STEVEN LIEBER,

                              Plaintiffs,            MEMORANDUM
                                                                AND ORDER
     -against-                                                96 CV 4672 (RJD) (RML)

CARDINAL HEALTH, INC., MARMAC
DISTRIBUTORS, INC., ALEX STACHTIARIS,
GORDON TROUP and JIM SCOTT,

                              Defendants.
----------------------------------------------------------------X

LEVY, United States Magistrate Judge:

        By letter application dated September 30, 2005, plaintiffs Delta Pharmaceutical Corp. ("Delta"), Raoul Diamanstein and Steven Lieber (collectively, "plaintiffs") seek reconsideration of "certain aspects" of this court's Memorandum and Order dated September 20, 2005. For the reasons set forth below, the court adheres to its original ruling. However, defendants Cardinal Health, Inc. ("Cardinal Health" or "Cardinal"), Marmac Distributors, Inc., Alex Stachtiaris, Gordon Troup and Jim Scott (collectively, "defendants") are hereby ordered to identify all persons present at the meeting described in Bates 1354 and 1355.

## DISCUSSION

        A party moving for reconsideration must show that the court overlooked controlling decisions or factual matters that were put before it on the underlying motion. Local Civil Rule 6.3. "The standard for granting a motion for reconsideration 'is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" L.I. Head Start Child Dev. Servs., Inc. v.

Kearse, 96 F. Supp. 2d 209, 211 (E.D.N.Y. 2000) (quoting Shrader v. CSX Transp., Inc., 70 F.3d 255, 256-57 (2d Cir. 1995)). A motion for reconsideration is not an opportunity to present facts that were known to the party on the earlier motion, or new legal theories in place of the ones used earlier that did not prevail. Kearse, 96 F. Supp. 2d at 211-12. "Nor may the party merely reiterate or repackage an argument previously rejected by the court; that argument is for appeal." PAB Aviation, Inc. v. United States, 98-CV-5952, 2000 U.S. Dist. LEXIS 12201 at *2-3 (E.D.N.Y. Aug. 24, 2000).

### Bates 1354 and 1355

Plaintiffs seek reconsideration of the court's ruling that Bates 1354 and 1355 are protected by the attorney-client privilege. Plaintiffs' primary complaint is that they did not know that Consolidated employees were present at the meeting with Cardinal's counsel, and thus were unable to respond to defendants' assertion of privilege with respect to these documents. (See Letter of J. Michael Gottesman, Esq., dated Sept. 30, 2005, at 1-2.) It does appear that defendants may have misled plaintiffs when they stated that the interviews "were not attended by third parties . . . ." (Letter Memorandum of Fernando A. Bohorquez Jr., dated May 11, 2005, at 8.). Accordingly, the court will revisit the documents and the merits of plaintiffs' arguments.

Plaintiffs allege that defendants should not be permitted to invoke the common interest doctrine as to Bates 1354 and 1355. They correctly cite the legal standard for applying the doctrine. There are two elements: first, "the party who asserts the rule must share a common legal interest with the party with whom the information was shared," and second, "the statements for which protection is sought [must have been] designed to further that interest." Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc., 215 F.R.D. 466, 471 (S.D.N.Y. 2003). "The key

2

consideration is that the nature of the interest be identical, not similar, and be legal, not solely commercial." Id. (citations and quotations omitted).

Additionally, "the real prospect of litigation may be a sufficient basis to form a joint defense agreement [or common interest] almost at any stage where litigation is feared." Lugosch v. Congel, 219 F.R.D. 220, 238 (N.D.N.Y. 2003) ("[T]he joint defense privilege should not be so narrowly construed to be limited solely to co-parties as long as the parties sharing the information have the same reasonable expectation of a shared legal bond and the anticipation of litigation is present."). Further, the Second Circuit has held that "[t]he need to protect the free flow of information from client to attorney logically exists whenever multiple clients share a common interest about a legal matter . . . and it is therefore unnecessary that there be actual litigation in progress for the common interest rule of the attorney-client privilege to apply." United States v. Schwimmer, 892 F.2d 237, 243-44 (2d Cir. 1989) (internal citations and quotations omitted). See also In re Megan-Racine Assocs., 189 B.R. 562, 573 (N.D.N.Y. 1995) ("[S]ince the attorney-client privilege extends to any communication regardless of the presence or absence of litigation, the joint-defense privilege should have the same parameters."). "Neither is it necessary for the attorney representing the communicating party to be present when the communication is made to the other party's attorney." Schwimmer, 892 F.2d at 244.

Plaintiffs' Amended Complaint alleges that "Cardinal Health, through its shipper, Consolidated Deliveries and Logistics Incorporated ("Consolidated") took delivery from Delta of 69 cartons containing products in the aggregate invoice amount of $99,983.85." (Amended Complaint, dated Nov. 6, 1996 ("Amended Compl."), ¶ 49.) According to plaintiffs, Consolidated picked up products from Delta which Cardinal then denied receiving. (Amended

3

Compl. ¶ 53.) Although Consolidated was not named as a defendant in the case, plaintiffs alleged spoliation of evidence and stated that "defendants have conspired and commenced to destroy and/or destroyed the records which Cardinal Health received from Consolidated and which demonstrate Cardinal Health's receipt of products which it denies receiving." (Amended Compl. ¶¶ 98-100.)[1]

Plaintiffs contend that the complaint does not allege that Cardinal and Consolidated conspired together. (Letter of J. Michael Gottesman, Esq., dated Oct. 10, 2005, at 1.) However, earlier in the complaint, plaintiffs alleged that Consolidated "complied" with Cardinal's request in refusing to retain copies of its entire file on the shipment of product to Cardinal Health even though it was Consolidated's standard practice to retain copies of shipment records. (Amended Compl. ¶ 53.) Therefore, when plaintiffs alleged that Cardinal Health "conspired" to destroy records, a reasonable implication was that Cardinal Health conspired with Consolidated because, according to plaintiffs, Consolidated uncharacteristically refused to turn over its records about the Delta shipment.[2] Whether explicit or implied, plaintiffs alleged that Consolidated improperly heeded Cardinal's requests to turn over or destroy relevant files.

"As in all claims of privilege arising out of the attorney-client relationship, a claim resting on the common interest rule requires a showing that the communication in question

---

[1] Plaintiffs withdrew this claim on October 8, 1998, well after the interviews at issue.

[2] See Amended Compl. ¶ 54 ("Cardinal Health asked Consolidated to turn over its entire file on the shipment to Cardinal Health and that Consolidated not keep any copies of its file because Cardinal Health intended to destroy evidence of its receipt of the goods which it maliciously and fraudulently denies receiving . . . .").

4

was given in confidence and that the client reasonably understood it to be so given." Schwimmer, 892 F.2d at 244. According to the sworn declaration of J.V. Wulf, Esq., Cardinal's in-house counsel, the documents labeled Bates 1354 and 1355 reflect notes of Wulf's interview with two Consolidated employees, and it was their intention that the attorney-client privilege be maintained. (Declaration of J.V. Wulf, Esq., dated May 11, 2005.) See Bombardier Capital, 215 F.R.D. at 472 ("Such a showing [of common interest] must be based on competent evidence, usually through the admission of affidavits, deposition testimony or other admissible evidence."). In this instance, it appears that the communication was made in confidence and that the clients reasonably understood it to be so made.

In their complaint, plaintiffs alleged that Consolidated and Cardinal did not keep files relating to the Delta "shipment" (Amended Compl. ¶¶ 53, 54). Wulf's handwritten notes relate directly to these shipment issues. Further, it is not unreasonable for Consolidated to have believed it would be sued by plaintiffs. See Lugosch, 219 F.R.D. at 242 (although they were not a named party, the complaint contained serious allegations against a non-party and, as such, the non-party was within its right to join those who had a common interest in defending a real or threatened lawsuit). See also In re Grand Jury Subpoena, 406 F. Supp. 381, 392 (S.D.N.Y. 1975) ("That a joint defense may be made by somewhat unsteady bedfellows does not in itself negate the existence or viability of the joint defense."). The court finds, based on the content of the documents and the context in which they were written, that Consolidated and Cardinal shared a common legal interest for the limited purpose of defending accusations that they conspired to destroy records relating to the Delta shipment. The documents are therefore protected by the attorney-client privilege.

It is unclear why defendants did not disclose to plaintiffs that Bates 1354 and 1355 involved a meeting with Consolidated employees. In order to remedy any prejudice that may have resulted, defendants are hereby ordered to disclose the names of all persons present at that meeting.

Prejudice from the Stay

Plaintiffs again submit that they were prejudiced by the stay of discovery in this action, which was in effect from January 28, 1997 through November 2001, but do not identify any controlling decisions or factual issues that the court has overlooked. (Letter of J. Michael Gottesman, Esq., dated Sept. 30, 2005, at 2-3.) Plaintiffs have cited no authority that creates an exception to the attorney-client privilege based on the passage of time, whether as the result of a court stay or mere delay. This is not the proper forum to re-litigate the propriety of the stay.

Bates 1313-1353, 1356, 1450-1455 and 1461-1463

Finally, it appears that plaintiffs seek reconsideration of the court's ruling as to Bates 1313-1353, 1356, 1450-1455 and 1461-1463, although they do not cite any controlling decisions or factual issues that the court overlooked. (Letter of J. Michael Gottesman, Esq., dated Sept. 30, 2005, at 3.) These documents are all attorney notes of interviews of Cardinal employees undertaken to investigate the allegations in the complaint when it was first filed. They contain highly confidential communications protected by the attorney-client privilege and the work product doctrine. (See Memorandum and Order, dated Sept. 20, 2005, at 10-13.)[3]

---

[3] Although plaintiffs complain that many of the witnesses they have deposed lack knowledge, they admit that they have not sought to take the deposition of Sandra Wray, a key figure in this case. (Letter of J. Michael Gottesman, Esq., dated Sept. 30, 2005, at 3.)

Plaintiffs have identified no exception that would justify their disclosure.

## CONCLUSION

For the reasons stated above, plaintiffs' motion for reconsideration is denied. Defendants are directed to disclose the names of all persons who were present at the meeting described in Bates 1354 and 1355.

SO ORDERED.

/s/
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
November    , 2005